**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BDO USA, P.C.,<br>*Movant*,<br>v.<br>ELLIOT FUHR,<br>*Respondent*. | Case No.: 1:25-mc-00572<br><br>Underlying Litigation<br>*BDO USA, P.C. v. Ankura Consulting Group, LLC, Kevin Lavin, and Phuoc Vin Phan*, No. 3:24-cv-00179-HEH in the United States District Court for the Eastern District of Virginia, Richmond Division<br><br>**ORAL ARGUMENT REQUESTED** |

**BDO USA, P.C.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO TRANSFER ITS MOTION TO COMPEL ELLIOT FUHR'S COMPLIANCE WITH SUBPOENA**

## PRELIMINARY STATEMENT

This matter belongs before the presiding court in Richmond, Virginia. BDO filed the underlying lawsuit because Ankura, Ankura CEO Kevin Lavin ("Lavin"), and former BDO partner and principal Phuoc Vin Phan ("Phan") stole BDO's Healthcare Transaction Advisory Services ("TAS") practice, which Phan valued at $188 million in Ankura's hands. Together, the defendants recruited at least 12 members of Phan's team to leave BDO and join Ankura in violation of common and statutory law, as well as Phan's contractual and fiduciary duties to BDO. Several of Phan's colleagues who followed him to Ankura also misappropriated substantial quantities of BDO's and BDO's clients' confidential information and transferred it to Ankura.

On October 20, 2025, BDO issued a subpoena to Fuhr, seeking documents in Fuhr's personal possession, custody, or control relevant to BDO's claims and damages in the underlying case. This includes documents concerning the valuation of BDO's Healthcare TAS practice, Ankura's recruitment and hiring of Phan, and "Project Anchor"—a presentation reflecting a "model" that Phan used to estimate the value of the BDO Healthcare TAS practice. Fuhr refuses to comply with BDO's subpoena.

At the initial pretrial conference in the underlying litigation, held in Richmond on March 14, 2025, the presiding Judge Henry E. Hudson remarked that to the extent the parties could not resolve any discovery disputes, they should feel free to come back to him if they encountered any "obstacles." Judge Hudson should hear this matter, and manage this complex case as a whole, which involves, among other things, the downloading and transferring of multiple gigabytes of BDO's stolen confidential information, as well as the improper deletion of other evidence by Phan. Fuhr is hardly a disinterested third-party in this matter, the discovery issues are complex, and it is appropriate for the forum court to resolve the dispute.

The 2013 Amendments to the Federal Rules of Civil Procedure created a new mechanism for transferring subpoena-related motions in exceptional circumstances, which was designed to eliminate the risks of disruption and inconsistent rulings created by Rule 45's general requirement that the district court located in a subpoena's place of production resolve discovery disputes. This is one of those exceptional circumstances. Requiring this Court to rule on BDO's Motion to Compel Fuhr's compliance with the subpoena (the "Motion") implicates those risks. That is why BDO asks this Court to transfer the Motion to the Eastern District of Virginia, which is already versed in the facts and legal issues in this litigation and has set the discovery schedule, and where the presiding judge has invited the parties' counsel (which would include Ankura and Fuhr's shared counsel) to come to him directly. Further, transferring the Motion will not burden Fuhr, whose counsel appeared in Richmond, Virginia, at the scheduling conference and motion argument that preceded that conference.

Fuhr asserts several boilerplate objections and an objection that responsive documents were "produced by Ankura as possessor and custodian of such records and documents." These are without merit. But resolving the Motion requires an intimate knowledge of the underlying litigation. Fuhr's objections implicate issues already being addressed by the forum court. That is why BDO now respectfully requests that this Court transfer the Motion to the Eastern District of Virginia for resolution, eliminating the risk of disrupting the underlying litigation.

## LEGAL STANDARD

"When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if . . . the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). Courts find exceptional circumstances by looking at factors like the "posture and complexity of the underlying action," *SBA Commc'ns Corp. v. Fractus, S.A.*, 2019 WL 4879333, at *2 (S.D.N.Y. Oct. 3, 2019), and the "risk of conflicting rulings" (*id.*); courts have transferred

cases to avoid unnecessary delay (*id.*); and where the motion to compel raises "issues of relevance, proportionality, and efficiency" with which the court overseeing the underlying litigation is already familiar. *Iwanksi v. Milliman, Inc.*, 472 F. Supp. 3d 104, 104 (S.D.N.Y. 2020), *report and recommendation adopted*, 2020 WL 5665696 (S.D.N.Y. Aug. 13, 2020).

"The Advisory Committee's notes to Federal Rule of Civil Procedure 45(f) observe that 'transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts.'" *Am. Plan Adm'rs v. S. Broward Hosp. Dist.*, 2021 WL 6064845 (E.D.N.Y. Dec. 22, 2021) (citation omitted); *see Patriot Nat. Ins. Grp. v. Oriska Ins. Co.*, 973 F. Supp. 2d 173, 176-77 (N.D.N.Y. 2013) (transferring parties' cross-motions to the Southern District of Florida because that court had significantly more knowledge of the case compared to the transferring court); *SBA Commc'ns Corp. v. Fractus, S.A.,* 2019 WL 4879333, at *2 (S.D.N.Y. Oct. 3, 2019) (observing that the transfer of a subpoena to another district was in the "interests of judicial economy" and would reduce any risk of a conflicting ruling).

**ARGUMENT**

Fuhr is the Leader of Innovation at Ankura. He has little to no interest in local resolution of BDO's Motion and will not experience any burden if the Motion is transferred to the Eastern District of Virginia because his attorneys are already litigating the underlying litigation in that forum. On the other hand, Fuhr hopes to shirk his discovery obligations by raising issues the Eastern District of Virginia is grappling with and is better positioned to resolve. Transfer of BDO's Motion to that forum is warranted and will avoid any further efforts by Fuhr (and Ankura) to slow resolution of this discovery dispute by forcing motion practice outside of the home forum.

## I. Transfer Does Not Burden Fuhr

Transferring BDO's Motion will not burden Fuhr in the slightest. To be sure, the Advisory Committee's notes to Rule 45 state that the "prime concern should be avoiding burdens on local nonparties subject to subpoenas," particularly the undue expense or burden associated with traveling to a foreign jurisdiction to litigate a discovery dispute because, "[t]o put it colloquially, a non-party doesn't usually have a horse in the race." *Romspen Inv. LP v. MFI-Miami Holdings LLC*, 2025 WL 372092, at *3 (N.D. Ill. Feb. 3, 2025) (transferring a subpoena-related dispute after determining that an interested third party would not be burdened by transfer and had only a minimal interest in local resolution because she was already litigating before the issuing court). But those concerns do not apply here.

Fuhr is a non-party in name only. He shares counsel for this subpoena with two of the three defendants in the underlying litigation (Ankura and Lavin), actively participates in crafting Ankura's business plans and strategies, has a vested interest in Ankura's financial performance, and has a direct interest in the outcome of this litigation. Because Ankura is actively litigating in Virginia, Fuhr's interest in "local" resolution of BDO's Motion to Compel is illusory. Any burden caused by a transfer is "minimal [], if any." *XY, LLC v. Trans Ova Genetics, L.C.*, 307 F.R.D. 10, 12 (D.D.C. 2014) (overruling nonparty's objection to transfer under Rule 45(f) because "[w]hile not a party to the [underlying] litigation, [nonparty] has a direct economic interest in [a party's] counterclaims . . . [and its] size and ongoing involvement in the underlying litigation make the burden of litigating this dispute in the [issuing District Court] minimal"); *see Jacobs v. Advanced Dermatology & Skin Cancer Specialists PC*, 2023 WL 8185701, at *8 (D. Ariz. Nov. 27, 2023) (noting that nonparty faced minimal burden from transfer when its counsel was already admitted *pro hac vice* in the issuing district court); *Hoog v. PetroQuest, LLC*, 338 F.R.D. 515, 518 (S.D.

Fla. 2021) (transferring motion to compel nonparty's compliance with subpoena because "there is no burden or prejudice to [the nonparty] to have the [district court that issued the subpoena] resolve this matter upon transfer, especially since [the nonparty's] counsel are the very same lawyers who represent the defendants in the underlying litigation").

Beyond that, the additional cost to litigate this discovery dispute in the Eastern District of Virginia is negligible. As mentioned, Fuhr's lawyers are already litigating in that forum. Service of any documents can be accomplished electronically. "Given the minimal burden, [Fuhr's] interest in obtaining local resolution of the motion to [compel] is outweighed by the interests of the [Eastern District of Virginia] in maintaining oversight of all aspects of this complex litigation." *XY, LLC*, 307 F.R.D. at 12; *see Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34-35 (D.D.C. 2014) (noting that a nonparty's interest in "local resolution of subpoena-related disputes is significantly reduced" when "the [nonparty has a] national reach and familiarity with litigation in courts outside this jurisdiction").

## II. Transfer Will Avoid Disruption of the Underlying Litigation and Eliminate the Genuine Risk of Inconsistent Rulings

Transferring BDO's Motion will promote judicial economy and "avoid disrupting the [Eastern District of Virginia's] management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *Abercrombie & Fitch Trading Co. v. Prestige Beauty Grp.*, 2024 WL 360847, at *1 (S.D.N.Y. Jan. 31, 2024). "Courts regularly 'transfer[ ] similar motions to the issuing court where the issuing court is best-positioned to address the subpoena dispute given the nature of the dispute and the posture and complexity of the underlying action, where the issuing court has already set out a discovery schedule in the underlying action, and to serve the interests of justice and judicial efficiency.'" *Id.* (quoting *Full Circle United, LLC v. Bay Tek Ent., Inc.*, 581 F. Supp.

3d 523, 525 (S.D.N.Y. 2022)). Such are the circumstances here, weighing heavily in favor of transferring BDO's Motion to the Eastern District of Virginia.

**1. Transfer Is Appropriate Because the Underlying Litigation Is Complex**

The underlying action is complex, a fact Ankura (through its counsel, which it shares with Fuhr) has conceded in the Eastern District of Virginia. This admission by Fuhr's counsel—coupled with the lack of burden to Fuhr—establishes exceptional circumstances on its own. *See Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr.*, 2019 WL 13256101, at *5, 6 (S.D. Fla. Mar. 18, 2019) (transferring motion to compel nonparty's compliance with subpoena to the issuing court because "the parties . . . do not disagree that the [issuing] court is presiding over a complex action" and any burdens to litigating in the issuing court were "minimal").

In any event, the Eastern District of Virginia is better positioned to resolve this motion because of the complexity of the underlying litigation and its procedural posture. *See In re Nonparty Subpoenas Duces Tecum*, 327 F.R.D. 23, 26 (D.D.C. 2018) ("Courts routinely transfer subpoena-related motions—even over objection—due to the complexity of the underlying case or because the issuing court is grappling with related issues." (citations omitted)).

Over a year ago, BDO commenced this lawsuit against defendants domiciled in two states after they conspired to steal and then stole BDO's Healthcare TAS practice (implicating witnesses in several other jurisdictions). Since then, the parties have briefed, and Judge Hudson has evaluated and ruled on, several motions to dismiss and various discovery motions. Judge Hudson is now intimately familiar with the factual and legal issues presented by this complex case, involving millions of dollars and at least 12 former BDO employees who joined Ankura and other interested third parties. His understanding and perspective place the Eastern District of Virginia

in a superior position to resolve the issues of relevancy, burden, and proportionality raised by BDO's Motion. *See HMD Global Oy v. Acacia Rsch. Corp.*, 2021 WL 2949471, at *3 (C.D. Cal. Jan. 26, 2021) ("[D]isputes regarding the scope of discovery, including [] relevancy and proportionality arguments . . . are more properly resolved by the issuing court, which is responsible for case management of the underlying action."); *DiCello Levitt & Casey LLC v. Objecting Minority Noteholders to Proposed Consent Judgment*, 2019 WL 13229221, at *2 (N.D. Ill. Feb. 19, 2019) (transfer is appropriate where the underlying litigation "is complex, involving millions of dollars," and resolving discovery objections on relevancy and proportionality grounds "implicate[s] . . . the litigation's complexity"); *Wultz v. Bank of China, Ltd.,* 304 F.R.D. 38, 46 (D.D.C. May 30, 2014) (transferring subpoena-related motions in "highly complex" litigation where issuing court "is in better position to rule . . . due to [its] familiarity with the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation").[1]

**2. Transfer Is Appropriate Because the Same Issues Are Likely To Be Raised in Several District Courts**

Defendants convinced and/or tried to convince at least 12 former BDO members of Phan's team to leave BDO and join Ankura, knowing that doing so required those employees to violate valid restrictive covenants with BDO, as well as their other contractual and fiduciary duties owed to BDO. Each has information directly relevant to the underlying litigation and obtaining it

---

[1] *See also Argento v. Sylvania Lighting Servs. Corp.*, 2015 WL 4918065, at *5 (D. Nev. Aug. 18, 2015) (noting that issuing courts are better situated to evaluate a nonparty's undue burden objection because they are "better positioned to determine whether the documents are indeed relevant" and, therefore, "better [able to] balance whatever relevance exists against the need to protect . . . a non-party"); *XY, LLC*, 307 F.R.D. at 12 (explaining that district courts around the country hold that arguments related to the scope of permissible discovery, like the "relevance argument advanced [by the subpoena recipient] emphasize[] the need for the court where the underlying matter lies to decide the matter").

required BDO to issue subpoenas to numerous former employees, some of whom have raised similar objections to those raised by Fuhr. Having multiple courts weighing in on similar discovery issues "would likely interfere with the issuing court's management of this case because the enforcement courts may reach different results and do so on different timeframes." *DiCello Levitt & Casey LLC*, 2019 WL 13229221, at *2 (transferring motion to compel subpoena where nonparty was "one of ten subpoena recipients across the country, spanning five judicial districts" to "avoid[] piecemeal litigation" (quoting *P.H. Glatfelter*, 847 F.3d at 458)). To avoid inconsistency, the Eastern District of Virginia should rule on this discovery issue to ensure that it complies with the discovery and trial schedules.

**3. The Eastern District of Virginia Is Already Grappling with the Same Issues Raised by Other BDO Motions**

Transfer is also appropriate because the Eastern District of Virginia is already "grappling with related issues" to those raised by Fuhr's improper objections. *In re Nonparty Subpoenas Duces Tecum*, 327 F.R.D. at 26 (citing *Judicial Watch*, 307 F.R.D. at 35). Setting aside his boilerplate objections, Fuhr asserts that the information requested by BDO's subpoena was "produced by Ankura as possessor and custodian of such records and documents." He is wrong,[2] and the propriety of his objections hinges on motions awaiting Judge Hudson's rulings.

Fuhr's claim that Ankura had already produced all the information requested by BDO's subpoena is false. For example, Ankura has not produced "documents related to personnel and clients which Ankura is alleged to have taken from BDO, as well as any documents which address the potential growth in Ankura's Healthcare TAS Practice Group's valuation as a result of acquiring those specific personnel and clients." ECF No. 159 at 3 (A.1). This failure is currently

[2] BDO's subpoena seeks information that only Fuhr possesses and that is independently relevant to BDO's claims against defendant Phan.

the subject of BDO's Motion to Enforce Discovery Order Pursuant to Local Rule 37(d) filed in the Eastern District of Virginia. That is, resolution of this Motion is directly tied to what BDO can obtain from Ankura, and *that* issue is already before Judge Hudson. Exigent circumstances exist to transfer BDO's Motion to Compel back to the Eastern District of Virginia for this reason alone. *In re Nonparty Subpoenas Duces Tecum*, 327 F.R.D. at 25-26 (transferring subpoena dispute *sua sponte* because "[i]t would make no sense to decide [a] Motion to Quash until the [issuing court] issued a decision on the underlying Motion to Compel, given the close factual relationship between the two motions," and "after [the issuing court] decides that motion, that court will be far better positioned to determine if the subpoenas facing the Petitioners are unduly burdensome").

**4. There Is a Genuine Risk of Inconsistent Rulings**

A ruling on Fuhr's objections runs a substantial risk of being inconsistent with the Eastern District's decisions on pending motions. This is reason enough to transfer. *In re Nonparty Subpoenas Duces Tecum*, 327 F.R.D. at 23 ("Courts routinely transfer subpoena-related motions—even over objection—due to the complexity of the underlying case or because the issuing court is grappling with related issues.").

But there are additional risks. BDO has also issued subpoenas to other former BDO employees, many of whom have raised similar objections and all of whom are represented by the same counsel. In a complex case like this, "there is a real danger of conflicting rulings regarding claims of privilege, relevance, and proportionality to the needs of the case." *Romspen Inv. LP*, 2025 WL 372092, at *4 (explaining that "discovery rulings – are a matter of discretion . . . mean[ing] that 'it is possible for two judges, confronted with the identical record, to come to opposite conclusions and for the appellate court to affirm both'" (quoting *Mejia v. Cook Cnty.*, 650 F.3d 631, 635 (7th Cir. 2011))); *Hoog*, 338 F.R.D. at 518 (noting "there is a significant risk of

inconsistent discovery rulings" when multiple courts evaluate "issues of relevancy [and] proportionality"); *Consumer Fin. Prot. Bureau*, 2019 WL 13256101, at *4 (stating that determinations by different "courts in different districts[] have the real potential for disruption in the underlying litigation"). Transfer is appropriate to avoid this risk.

**CONCLUSION**

Transferring BDO's Motion to the Eastern District of Virginia eliminates the risks of inconsistent rulings and disrupting the underlying litigation without imposing any additional burden on Fuhr. BDO therefore respectfully requests that the Court grant its Motion.

Dated: December 16, 2025

Respectfully submitted,

**McDERMOTT WILL & SCHULTE LLP**
/s/ *Mark D. Meredith*
Mark D. Meredith (3989449)
One Vanderbilt Avenue
New York, NY 10017
Phone: (212) 547-5602
Fax: (646) 417-7688
mmeredith@mwe.com

*Attorney for Movant BDO USA, P.C.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 16th day of December 2025, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the applicable ECF Registrants. A copy of this motion was also served on Fuhr's counsel and counsel of record in the underlying litigation pending in the Eastern District of Virginia via email.

*/s/ Mark D. Meredith*
Mark D. Meredith